UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **DARRELL SEMIEN ET AL** | **CASE NO. 2:20-CV-01284 LEAD**<br>**c/w 2:20-1286 (Member)**<br>**c/w 2:20-213 (Member)** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **LABORATORY CORPORATION OF AMERICA ET AL** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the Court is a "Motion for Summary Judgment" (Doc. 57) filed by Defendants, Laboratory Corporation of America and Laboratory Corporation of America Holdings (collectively referred to as "Labcorp" of "Defendants") wherein Defendant move to dismiss with prejudice claims made against them by Plaintiffs, Karla Semien, individually and on behalf of her minor child, M.D.S., Malachi Semien, Madison Semien, LaQuanna Semien, Tyler Semien, and Corey Semien.

## FACTUAL STATEMENT

Defendant SWLA Center for Health Services ("SWLA") in Oberlin, Louisiana, is a federally qualified healthcare provider. When a SWLA patient requires clinical laboratory specimen testing beyond basic dipstick tests, a specimen may be transferred to Labcorp for further testing.[1]

On August 21, 2019, Karla Semien took her daughter M.D.S. to SWLA to obtain a doctor's note to allow her to use the bathroom more frequently at school.[2] M.D.S. was ten

---

[1] Defendant's exhibit 1, Colleen Unkel depo. p. 27:6-9.
[2] Doc. 1-1, ¶ ¶ 4-5.

years old at the time.³ SWLA nurse practitioner Colleen Unkel ("Unkel") ordered a urine sample and urinalysis at the clinic.⁴ M.D.S. urinated in a cup and left the cup in the cupboard for an SWLA employee to retrieve.⁵ An SWLA nurse conducted a preliminary dipstick test on the urine specimen believed to be from M.D.S., which the SWLA nurse read as containing blood in the specimen, and ordered it sent to Labcorp for further testing.⁶

An SWLA nurse transferred the urine to a sealed vacutainer transfer tube, which was at that time labeled at the clinic with M.D.S.'s name and date of birth (the "specimen").⁷ The sealed vacutainer transfer tube and a requisition form, both identifying the specimen as from M.D.S., were placed in a sealed transfer bag and carried by courier from the clinic to Labcorp in Lafayette.⁸

When the specimen arrived at Labcorp, a Labcorp accessioner opened the sealed transfer bag and entered the information from the clinic's requisition paperwork into the computer, which automatically populated M.D.S.'s information into the Labcorp computer.⁹ A Labcorp label, which contained the same information that was provided by SWLA's paperwork, was printed and placed on the sealed vacutainer transfer tube over SWLA's label.¹⁰

---

³ *Id.*
⁴ *Id.*; Defendant's exhibit 1, Unkel depo., p. 110:10-13.
⁵ *Id.* p. 29:7-16.
⁶ *Id.* pp. 42:11-43:15; Doc. 1-1, ¶ 9.
⁷ Defendant's exhibit 1, Unkel depo., pp. 38:1-15; 81:6-82;25; Defendant's exhibit 2, Ann Steven deposition, p. 9:15-19.
⁸ Defendant's exhibit 1, Unkel depo., p/. 80:12-15; Defendant's exhibit 3, Philomena Hatch deposition, pp. 14:15-18; 80:12-81:7; Defendant's exhibit 2, Steven depo., pp 8:14-21; 35:23-25.
⁹ Defendant's exhibit 2, Steven depo., 8:14-21; 10:5-21; 35:23-36:2; Defendant's exhibit 4, Emily Monteleon deposition, p. 17:6-22.
¹⁰ Defendant's exhibit 2, Steven Depo, pp. 14:4-15:24; Defilant's exhibit 4, Monteleon depo. p. 20:13-20.

Next, a laboratory technologist, Philomena Hatch, with nearly forty years of experience, scanned M.D.S.'s sealed specimen information into the computer at her workstation.[11] Hatch uncapped the sealed vacutainer transfer tube and conducted a dipstick test on the specimen, utilizing a Clinitek machine.[12] The dipstick test results at Labcorp were consistent with the results of the initial dipstick test conducted at SWLA, including being positive for the presence of blood.[13]

Ms. Hatch then performed a microscopic examination of the urine specimen from the vacutainer transfer tube.[14] Ms. Hatch observed the presence of spermatozoa in the urine specimen.[15] Noting M.D.S.'s age on the clinic paperwork, Ms. Hatch performed a second microscopic analysis of a specimen from the vacutainer transfer tube on a new slide.[16] Ms. Hatch again observed the presence of sperm in the specimen received from SWLA. Ms. Hatch set aside the specimen vacutainer transfer tube from the clinic for her colleague, Ann Steven, to analyze and verify the findings.[17]

Ms. Steven conducted a new microscopic examination of the specimen (the third time a Labcorp employee checked the specimen).[18] Steven's examination also confirmed the presence of sperm in the clinic's specimen in the vacutainer transfer tube labeled as being from M.D.S.[19]

---

[11] Defendant's exhibit 3, Hatch depo., pp. 15:15-18; 20:24-21:13, 74:18.
[12] *Id.* p. 22:8-20.
[13] Defendant's exhibit 1, Unkel depo. pp. 43:8-10; 133:3-18; Defendant's exhibit 2, Steven Depo. 64:22-65:1; 70:20-71:18; defendant's exhibit 3, Hatch depo. pp. 83:14-24, 89:6-15.
[14] *Id.* p. 34:2-17.
[15] *Id.* p. 11:2-12.
[16] *Id* .pp. 45:21-47:13.
[17] *Id.* p. 56:3-17.
[18] Defendant's exhibit 2, Steven depo. pp. 33:18-36:2; Defendant's exhibit 3, Hatch depo., p. 81:20-24.
[19] Defendant's exhibit 2, Steven depo. p. 35:2.

Ms. Steven peeled back the Labcorp label and confirmed that the vacutainer transfer tube's original label from SWLA also identified the clinic's specimen as belonging to M.D.S.[20] Steven notified the lab director, Dr. Lisa Altmann, a pathologist, who called SWLA to notify the clinic of the presence of sperm in the clinic's specimen labeled as belonging to the ten-year-old M.D.S.[21]

Labcorp called the clinic to report the presence of sperm in the urine specimen due to the patient's age on the clinic's paperwork.[22] Dr. Altmann did not make any comments that Plaintiffs mistakenly allege to have occurred in the one Labcorp call to SWLA, nor did Dr. Altmann insist that SWLA call or involve the police.[23] Dr. Altmann did not comment on the alleged amount of sperm in the specimen.[24]

Plaintiffs did not witness or hear this conversation and have no personal knowledge of what was said, nor did Plaintiffs speak directly with or deal with any Labcorp personnel.[25] After receiving the specimen testing results, SWLA nurse practitioner Unkel requested that M.D.S.'s parents come to the clinic to discuss the results and the presence of sperm in the urine specimen.[26] Unkel told M.D.S.'s parents that she was going to report the results to the authorities as a mandatory reporter.[27] M.D.S.'s father, who was a deputy sheriff, told Unkel that he would handle it.[28]

---

[20] Defendant's exhibit 2, Steven depo. pp. 35:23-36:2.
[21] *Id.* p. 36:18-23; defendant's exhibit 5, Lisa Altmann depo. p. 83:18-19.
[22] *Id.* pp. 84:16-85:8.
[23] *Id.* pp. 85:5-8; 87:17-89:1; Defendant's exhibit 1, Unkel depo. pp. 48:3-52:3.
[24] Defendant's exhibit 5, Altmann depo. p. 90:11-19.
[25] Defendant's exhibit 6, Plaintiff's Answers to Request for Admissions 1-6, 11-12, 14-15.
[26] Defendant's exhibit 1, Unkel deposition, p. 58:10-18.
[27] *Id.* pp. 23:13-20; 58:18-21; 60:13-18.
[28] *Id.* p. 65:16-24.

M.D.S. and her parents asked if M.D.S. could give a new, second specimen at SWLA, which M.D.S. provided.[29] Unkel conducted a dipstick analysis on this new, second specimen, and it was negative for the presence of blood.[30] The second specimen was never sent to Labcorp for analysis or reported to Labcorp nor reported in the clinic's medical records.[31]

Labcorp did not "mix up" the specimen received from SWLA.[32]

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State*

---

[29] *Id.* p. 67:7-15.
[30] *Id.* p. 68:15-22.
[31] *Id.* p. 72:11-16.
[32] *Id.* pp. 43:8-10; 133:3-18; Defendant's exhibit 2, pp. 33:18-36:2; Defendant's exhibit 3, Hatch depo. p. 81-20-24.

*Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## LAW AND ANALYSIS

In its Motion for Summary Judgment, Labcorp moves to dismiss the claims made against it based on the undisputed facts stated hereinabove. Labcorp maintains that it did nothing wrong, and that it did not violate the standard of care in clinical laboratory testing. It argues that extensive discovery has provided no evidence indicating otherwise.

In its opposition, Plaintiffs submit that it does not intend to offer any expert testimony against Labcorp, and as such does not oppose Labcorp's Motion for Summary Judgment.[33] Expert testimony is required to establish a claim for negligence in clinical laboratory testing against Labcorp. *Ferguson v. Progressive Acute Care Avoyelles,* LLC,

---

[33] Plaintiff's opposition, p. 1, Doc. 59.

237 So.3d 533, 538 (La. App. 3 Cir. 01/04/18). As such, the Court will grant Labcorp's Motion for Summary Judgment.

## CONCLUSION

For the reasons explained herein and noting that Plaintiffs do not oppose Defendant's Motion for Summary Judgment, the Court will grant the Motion and dismiss Plaintiff's claims against Labcorp.

**THUS DONE AND SIGNED** in Chambers on this 8th day of January, 2024.

_____
JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE