UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **DARRELL SEMIEN ET AL** | **CASE NO. 2:20-CV-01284 LEAD** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **LABORATORY CORPORATION OF AMERICA ET AL** | **MAGISTRATE JUDGE LEBLANC** |

## MEMORANDUM RULING

Before the Court is the "United States' Motion for Summary Judgment" (Doc. 68) wherein Defendant, the United States moves to dismiss Plaintiffs' lawsuit because they failed to provide expert testimony to support their medical malpractice action.

## FACTUAL STATEMENT

SWLA Center for Health Services ("SWLA") is a non-profit community health center with facilities in Lake Charles, Lafayette, Crowley, and Oberlin, Louisiana. SWLA is a grant recipient of the Bureau of Primary Health Care, Health Resources and Services Administration, U.S. Department of Health and Human Services under the Health Centers Program, 42 U.S.C. § 254b. Therefore, SWLA is a Federal Tort Claims Act ("FTCA")-covered entity. Pursuant to the Federally Supported Health Centers Assistance Acts of 1992 and 1995, both the SWLA and its employees are deemed as employees of the Public Health Services ("PHS") and are treated as PHS employees for purposes of medical liability coverage. 142 U.S.C. § 233(g).

On August 21, 2019, Karla Semien took her ten-year old daughter, M.D.S. to the SWLA Oberlin Clinic to obtain a doctor's note allowing her to use the bathroom more

frequently at school.[1] M.D.S. was treated by nurse practitioner Colleen Unkel for complaints of bladder incontinence.[2]

Unkel documented that M.D.S. was a ten-year-old female who came to the clinic because she urinated on herself at school after her teacher would not allow her to go to the bathroom when she requested to go. The medical record indicates that M.D.S. was accompanied by her adoptive mother who wanted a doctor's note so that M.D.S. would be permitted to go to the bathroom during class if needed. Unkel also noted that M.D.S. had a history of urinary urgency and intermittent frequency.[3] After examining M.D.S., Unkel requested that M.D.S. provide a urine and blood sample.[4]

SWLA Licensed Practical Nurse Abby Walker collected M.D.S.'s urine and blood sample pursuant to the order issued by Unkel. The first step of urine collection is to write the patient's name on a paper cup.[5] The patient urinates in the cup by themselves or with the assistance of their parent.[6] The cup containing the urine is then placed in a two-sided cabinet between the bathroom and the lab, where it is collected by a nurse.[7] After collection by the nurse, the urine sample is tested using a urine dipstick.[8]

---

[1] Doc. No. 1-1, ¶¶ 4-5.
[2] Defendant's exhibit A, Deposition of Colleen Unkel, pp. 17:22-18:10; SWLA 8/21/19 visit note, attached as Ex. 2 to Unkel depo. 3.
[3] *Id.*
[4] *Id.* at pp. 12:3-20, 13:20-15:2.
[5] *Id.* at pp. 13:18-14:8; Defendant's exhibit B, Deposition of Abby Walker, p. 35:4-20.
[6] Defendant's exhibit A, Unkel Depo., pp. 13:18-14:8.; Walker Depo., pp. 32:5-33:25.
[7] Walker Depo. p. 33:7-25.
[8] Unkel Depo. p. 42:11-19; Walker Depo., pp. 35:21-36:4.

M.D.S. urinated in the cup by herself.[9] The urine dipstick test administered for the M.D.S. sample showed a large amount of blood, moderate leukocytes (white blood cells), trace protein, and no glucose.[10] After reviewing the M.D.S. test results, Unkel issued an order for the urine sample to be tested at LabCorp.[11] After this order is entered, the nurse transfers urine from the cup to a test tube provided by LabCorp.[12] A computer printed label containing the patient's personal identifying information is placed on the test tube. The test tube is then sealed in a bag along with a printed laboratory order.[13] A courier retrieves the sample from SWLA and delivers it to LabCorp.

The urine sample attributed to M.D.S. was sent to LabCorp for further testing on August 21, 2019. LabCorp reported that a large amount of semen was present in the urine sample, which is an indication of rape. After the M.D.S. urine sample arrived at LabCorp, laboratory technician Philomena Hatch performed another dipstick test on the sample.[14] The results of the LabCorp dipstick test were consistent with the dipstick performed at SWLA for the M.D.S. specimen.[15] Specifically, the LabCorp report indicated that the M.D.S urine sample had 3+ blood, 0-5 leukocytes, and trace protein. The M.D.S. urine sample did not have glucose or ketones present.[16]

These findings were reported to SWLA. The parents of M.D.S. were contacted and requested to come back to the clinic on August 22, 2019. M.D.S. denied that she had been

---

[9] Defendant's exhibit C, Deposition of M.D.S., pp. 14:24-15-6.
[10] Defendant's exhibit A, Unkel Depo. pp. 19;17-19, 43:6-10; Defendant's exhibit B, Walker Depo., p. 36:5-7.
[11] Unkel Depo. pp. 44:19-44:8.
[12] Unkel Depo. pp 37:17-38:17; 81:23-82:22 Walker Depo. pp. 73:9-15.
[13] Unkel Depo. p. 80:3-15; Walker Depo., p. 73:16-20.
[14] Defendant's exhibit D, Deposition of Philomena Hatch, p. 22:8-20.
[15] *Id.* p. 83:14-24; Defendant's exhibit E, Ann Steven Depo., pp. 64:21-65:1, 70:20-71:18.
[16] Defendant's exhibit D, LabCorp Report, attached as Ex. 4 to Hatch depo.

sexually assaulted and/or touched inappropriately. M.D.S. provided a second urine sample, which was tested by Nurse Unkel and showed no blood present. Unkel also examined M.D.S. and saw no signs of trauma or sexual abuse. Unkel did not document that M.D.S. was seen at SWLA on August 22, 2019, or that a second urine sample was collected and tested, or that M.D.S. was examined on August 22, 2019. Unkel informed Mrs. Semien that the absence of blood meant that M.D.S. had been raped 5 days prior.

According to Defendant, only one other patient gave a urine specimen at SWLA on the same date that the M.D.S. sample was collected. That patient was female.[17] The other patient's urine sample was taken as part of a checkup for diabetes.[18] The dipstick test administered for the other patient's urine sample showed glucose and ketones present in the urine.[19] However, a blood sample taken from M.D.S. and tested at SWLA showed a normal range glucose level of 85.[20]

Unkel and Walker reviewed all of the charts for patients seen at SWLA on August 21, 2019, to determine whether any other lab studies, including urinalysis, were ordered. Of the ten to twelve patients seen on August 21, 2019, only one was male.[21] Unkel testified that no labs were drawn for the male patient,[22] and the only other urine sample collected at SWLA on August 21, 2019, was taken from a diabetic woman whose test results were consistent with her diabetes symptoms and diagnosis.[23]

---

[17] *Id.* p. 31:21-24.
[18] *Id*. p. 32:18-25.
[19] *Id.* pp. 54:23-55:15.
[20] *Id. p.* 147:4-10.
[21] *Id.* p. 88:1-6.
[22] *Id.* p. 85:13-22.
[23] *Id.* pp. 54:23-55:15.

The male patient's chief complaint was dizziness, and his medical records revealed that he had a past medical history of gout and was prescribed tamsulosin. M.D.S.'s brother, M.S., was required to give a DNA sample. The DNA testing results showed that only male DNA was present in the sample and that the DNA found in the test tube did not match M.S.'s DNA. M.D.S.'s father, Darrell Semien, was diagnosed with prostate cancer in 2012. He had a radical prostatectomy at MD Anderson in 2014, where his prostrate and both right and left seminal vesicles were removed.

As a healthcare provider, Unkel is a mandatory reporter of suspected sexual abuse of a minor. Louisiana Children's Code Art. 609, et seq.[24] Once Unkel informed M.D.S.'s parents that her urine sample contained spermatozoa, M.D.S.'s father, who was a sheriff's deputy, confirmed that he would report the issue to local authorities.[25] Consequently, a law enforcement investigation ensued.

MDS was examined by Dr. Scott Bergstedt on September 5, 2019. His examination showed no signs of repeated penetration and that M.D.S. had a normal pelvis and hymen.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995).

---

[24] Unkel Depo., pp. 23:13-20, 57:14-59:10; 60:13-18.
[25] Unkel Depo., p. 65:16-24.

The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## **LAW AND ANALYSIS**

Plaintiffs have filed a claim pursuant to the Federal Tort Claims Act against SWLA. Plaintiffs allege that SWLA mixed up M.D.S.'s urine sample with that of an adult male. Plaintiffs argue that SWLA mislabeled M.D.S.'s urine sample. LabCorp has been dismissed from this lawsuit, as the Court found there was no genuine issue of material fact,

that LabCorp sampled the same sample that was sent from SWLA. Defendant, the United States of America, argues that the Court should grant summary judgment in its favor because Plaintiffs have failed to provide expert testimony to support their medical malpractice action, and such is necessary as a matter of law to prove negligence.

To create a genuine issue of material fact, Plaintiffs rely on circumstantial evidence that SWLA negligently attributed a urine sample of an adult male to M.D.S., a ten-year-old female. Plaintiffs have identified Monica Quaal as an expert in forensics and serology.[26] Quaal testified that the sample sent from the clinic that showed semen in it could not have come from M.D.S., or a female. She further explained that her testing ruled out M.D.S.'s brother, M.S., and it did not recognize any female DNA.[27] She reasoned that there had to be a sample switch, and that the test results showed that the urine sample tested had to come from a male.[28] In other words, the urine sample sent to LabCorp was not M.D.S.'s, a female, but had to come from a male. As noted above, there was a male patient at the SWLA clinic on August 21, 2019. M.D.S. was at the clinic from 3:08 p.m. until 4:06 pm and the male patient was at the clinic between 2:08 pm and 3:21 pm.[29]

Additionally, Nurse Walker testified that it was "possible" that the male patient who was at the clinic, may have provided a urine sample that was not documented.[30] The Court further notes that the second urine sample provided by M.D.S. on August 22, 2019, was not documented and showed no sign of blood or semen in the sample.

---

[26] Plaintiff's exhibit V, Deposition of Monica Quaal.
[27] Plaintiff's exhibit P, Quaal depo., exhibit M, p. 34:17-25.
[28] *Id.* p. 72:11-23.
[29] Plaintiff's exhibit S, Abby Walker depo., exhibit 6.
[30] Plaintiff's exhibit D, Walker depo. p. 67:14-19.

Defendants argue that because Quaal did not provide a written expert report, her testimony does not satisfy Federal Rule of Civil Procedure 26(a)(2)(B). Defendants remark that Quaal is testifying as to Plaintiff's crime laboratory results of the testing. Quaal is a crime laboratory analyst who offered testimony to explain the test results from the crime laboratory.

Plaintiffs argue that they are not required to provide expert testimony "where the negligence is so obvious that a lay person can infer negligence without the guidance or expert testimony." *Saddler v. Vermilion Parish Hosp. Serv. Dist. #2*, 310 So. 3d 614, 618 (La.App. 3 Cir. 12/16/20). Additionally, "expert testimony is not required where the physician does an obviously careless act, ... *Pfiffner v. Correa*, 643 So.2d 1228, 133-34 (La. 10/17/94).

M.D.S. testified that the process explained by Unkel and Walker regarding the collection of her urine sample did not happen. Instead, she testified that she did not see her name on the cup and she was not given a cup by the nurse.[31] Mrs. Semien testified that M.D.S. got the cup from the bathroom, and that it was not handed to her or M.D.S.[32] She also testified that she did not go into the bathroom with MDS, as is the required process for minors, and she did not see the cup labeled with M.D.S.'s name on it.[33]

The Court finds that Plaintiffs have submitted sufficient summary judgment evidence to create a genuine issue of material fact for trial.

---

[31] Defendant's exhibit E, Deposition of MDS, p. 15:7-11.
[32] Defendant's exhibit B, Deposition of Karla Semien, p. 48:17-20.
[33] *Id.* p. 50:10-18.

## CONCLUSION

For the reasons explained herein, the United States' Motion for Summary Judgment" (Doc. 68) will be denied.

**THUS DONE AND SIGNED** in Chambers on this 16th day of April, 2024.

*[signature]*
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**